UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TOM HENSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MCKINLEY TRAILER VILLAGE, an Unknown Entity Type; THE KAUR GROUP, LLC, a California Limited Liability Corporation; NITA DENHOY, an individual; BALWANT S. DENHOY, an individual,[1]<br><br>　　　　Defendants. | No. 2:21-cv-02189 WBS AC<br><br>ORDER RE: PRELIMINARY INJUNCTION |

----oo0oo----

　　　　Before the court is plaintiff's Motion for a Preliminary Injunction to enjoin defendants from proceeding with an unlawful detainer action against plaintiff. (Docket No. 8.)

---

[1] Defendants state in their opposition that "McKinley Trailer Village" is erroneously sued and should actually be "2525 South El Dorado LLC." (Def.'s Opp'n at 1.) Defendants also note that Balwant DenHoy is deceased. (Decl. of Nita DenHoy ¶ 2.) However, no formal motions have been brought regarding these issues so the court does not address them here.

1

The court held a hearing on the motion on January 10, 2022.

I.   Factual and Procedural Background

Plaintiff has lived in his mobile home at the McKinley Trailer Village mobile home park since 1987 and began working as the onsite property manager in 2002.  (Decl. of Tom Henson ("Henson Decl.") ¶ 4 (Docket No. 8-3).)  In February 2020, defendants purchased McKinley Trailer Village.  (Decl. of Nita DenHoy ("DenHoy Decl.") ¶ 3 (Docket No. 11).)  Plaintiff and defendants agreed that plaintiff would continue his role as the onsite property manager at an hourly rate and receive free rental space for his mobile home.  (Henson Decl. ¶ 7; DenHoy Decl. ¶ 3.) Plaintiff claims he worked 899 hours from March 2, 2020 to October 31, 2020, for which he did not receive pay, and did not receive his first paycheck until November 2020.  (Henson Decl. ¶ 9-10.)

In May 2021, plaintiff and defendants engaged in negotiations over plaintiff's mobile home and any alleged unpaid wages for the March to October 2020 period.  (Henson Decl. ¶ 12; DenHoy Decl. ¶ 7.)  Plaintiff, via email, offered to sell his mobile home for $45,000, "which includes back-pay for unpaid wages."  (DenHoy Decl., Ex. 1 (Docket No. 11-1).)  Defendants prepared a purchase agreement for the mobile home for $40,000 and a severance agreement for $5,000 and sent it to plaintiff on July 2, 2021.  (DenHoy Decl., Exs. 2-5 (Docket No. 11-1); Henson Decl. ¶ 16.)  On July 6, 2021, plaintiff notified defendants that he no longer wished to sell his mobile home and would instead apply for tenancy within the McKinley Trailer Village, which he did. (Henson Decl. ¶ 17.)

2

Shortly thereafter, plaintiff was orally informed that his tenancy application was approved. (Id. ¶ 18.) Defendants claim that plaintiff was orally informed in July 2021 that the space rent would be $1,800 and that plaintiff had himself expected it to be $2,000. (Decl. of Nicole Udall ("Udall Decl.") ¶ 8 (Docket No. 13).) From August 2021 to December 2021, plaintiff has submitted checks for rent to defendants for $500 each month as that is the maximum amount any tenant pays in McKinley Trailer Village for space rent. (Henson Decl. ¶ 20; DenHoy Decl., Ex. 10 (Docket No. 11-1).)

On September 3, 2021, plaintiff's counsel sent, via email, a letter to defendant Nita DenHoy notifying DenHoy of plaintiff's wage and hour claims. (Decl. of Natalia Asbill-Bearor ("Asbill-Bearor Decl.") ¶ 2 (Docket No. 8-2).) Plaintiff claims that shortly after this letter was sent, he was given a rent bill indicating his rent was $1,800 a month. (Henson Decl. ¶ 25.) Defendants claim this rent bill was given to plaintiff on August 27, 2021, prior to his counsel's email to DenHoy. (DenHoy Decl. ¶ 16; Udall Decl. ¶ 9.)

Defendants served plaintiff with two 15-day notices to pay or quit, in October and November 2021, demanding he pay the entirety of his rent balance at the $1,800 rate. (Henson Decl. ¶ 27-28; DenHoy Decl. ¶ 18.) Plaintiff has not paid that rent balance, and defendants claim they have not yet commenced an unlawful detainer action but plan to do so. (DenHoy Decl. ¶ 18.)

Plaintiff brought this lawsuit alleging state and federal claims against defendants based on the alleged failure to pay wages and retaliation against him in the form of an

3

excessively high "space rent" for his mobile home for seeking those wages. (Docket No. 1.)  The court previously denied plaintiff's Motion for a Temporary Restraining Order.  (Docket No. 7.)  After commencement of this suit, defendants paid to plaintiff the amount of wages he asserted were due for the 899 hours of work he performed, plus waiting time penalties pursuant to California Labor Code, but plaintiff contends he is still owed interest, attorney's fees and costs, and liquidated damages. (DenHoy Decl. ¶ 22; Pl.'s Reply at 7 (Docket No. 17).)  Plaintiff now seeks to enjoin defendants from proceeding forward with an unlawful detainer action against him.

II. Discussion

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citation omitted).  To obtain a preliminary injunction, the moving party must establish (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A plaintiff must make a showing on all four prongs to obtain a preliminary injunction." A Woman's Friend Pregnancy Res. Clinic v. Becerra, 901 F.3d 1166, 1167 (9th Cir. 2018) (internal quotation marks and citations omitted).

   A.   Irreparable Harm

The Ninth Circuit has held that that the risk of

4

eviction creates a likelihood of irreparable harm. See Park Vill. Apartments Tenants Ass'n v. Mortimer Howard Tr., 636 F.3d 1150, 1159 (9th Cir. 2011). Like the situation in Park Village Apartments, the record here demonstrates that defendants plan to commence eviction proceedings. See id.; (DenHoy Decl. ¶ 18.) Plaintiff claims his trailer is unmarketable at the $1,800 space rent rate, and he will incur costs of $10,000 to $20,000 to move the trailer, if the trailer is even movable given its old age. (Pl.'s Mot. at 11.) Plaintiff acknowledges that these moving costs "may be compensated by damages." (See id.) However, while costs associated with eviction may have a remedy at law, the eviction itself does not. Given the "likelihood of eviction," the court determines that defendants' plan to evict plaintiff creates a likelihood of irreparable harm. See Park Village Apartments, 636 F.3d at 1159.

     B.   Likelihood of Success on the Merits

Plaintiff brings, along with his failure to pay wages and emotional distress claims, a retaliation action under the Fair Labor Standards Act ("FLSA") of 1983. (Docket No. 1.) Plaintiff argues that defendants have retaliated against him by charging him $1,800 space rent for raising the issue of unpaid wages. (Pl.'s Points and Authorities ISO Mot. ("Pl.'s Mot.") at 6 (Docket No. 8-1).)[2] Plaintiff's refusal to pay the alleged retaliatory rent will likely lead to his eviction, as discussed

---

[2] Both parties request that the court judicially notice various documents related to employment benefits and taxation. (Docket Nos. 18 and 19.) The court need not rely on the materials referenced within the requests at this stage. Accordingly, both parties' requests for judicial notice are denied.

above.  Accordingly, the court considers the likelihood of success on the retaliation claim at this stage.

Under 29 U.S.C. § 215(a)(3), it is unlawful to discharge or discriminate against an employee because the employee has complained about violations of the FLSA to his employer.  Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1151 (9th Cir. 2000).  To prove retaliation under 29 U.S.C. § 215(a)(3) a plaintiff must show that (1) plaintiff engaged in statutorily protected conduct under § 215(a)(3) of the FLSA, or the employer must have erroneously believed that plaintiff engaged in such conduct; (2) plaintiff suffered an adverse employment action; and (3) a causal link exists between the plaintiff's conduct and the employment action.  See Mayes v. Kaiser Found. Hosps., 917 F. Supp. 2d 1074, 1080 (E.D. Cal. 2013) (Mueller, J.); Singh v. Jutla & C.D. & R's Oil, Inc., 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002); Batts v. City of Los Angeles, No. CV 06-00843 GAF (AJWx), 2010 WL 11595885, at *2 (C.D. Cal. Aug. 12, 2010) (citing Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F. 3d 1185, 1196-97 (9th Cir. 2003) (discussing Title VII retaliation claims)).

Both sides make credible arguments on the questions of whether the $1,800 charge of rent can be considered an "adverse employment action," whether $1,800 is the fair market value for space rent,[3] and whether there is a casual link between the

---

[3] Both parties make objections to statements in the other parties' declarations discussing the rental rate at other neighboring trailer parks.  Because the Federal Rules of Evidence do not apply strictly at the preliminary injunction phase, the court considers the parties objections only as they go to the weight to be accorded to the objectionable statements.  See Flynt

plaintiff's complaint and the rent charge based on the timing of the rent charge.  At this stage of the proceeding, based on the evidence produced thus far, the court is inclined to be more persuaded by plaintiff's evidence that no one in the park currently pays more than $500 a month in rent, and the temporal relationship between plaintiff's protected conduct and the increase in rent, which suggests an adverse employment action based on retaliatory motive has occurred.  In balance, it is not unlikely that plaintiff could prevail on the merits of his claims.

      C.    Balance of Equities and Public Interest

Plaintiff faces an imminent risk of eviction.  In contrast, the requested injunctive relief does not appear to be unduly burdensome upon defendants, as they will continue to receive space rent of $500 a month from plaintiff. See Park Village Apartments, 636 F.3d at 1159-60 (holding that "plaintiff's risk of eviction, the fact that Defendants would not be unduly burdened . . . because they would continue to receive" rent "militated in favor of preliminary relief").  Though there is a dispute about the fair market value of the space rent, other tenants at the park pay at maximum $500, and defendants will continue to receive a rent amount in accordance with the other

---

Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial"); Stardock Sys., Inc. v. Reiche, No. C 17-07025, 2018 WL 7348858, at *6 (N.D. Cal. Dec. 27, 2018) ("[T]he Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings.")

7

tenants while the parties litigate whether plaintiff is obligated to pay more.

Further, an order enjoining defendants will prevent eviction and encourage compliance with anti-retaliation laws, which is in the public interest.  Id. at 1160 (quoting N.D. v. Haw. Dep't of Educ., 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t's obvious that compliance with the law is in the public interest.")  For these reasons, the court finds that the balance of equities and public interest factors also favor plaintiff.

In sum, plaintiff has made a sufficient showing on all four prongs to obtain a preliminary injunction.

III. Bond

Rule 65(c) of the Federal Rules of Civil Procedure expressly requires the movant to give security for the issuance of a preliminary injunction.  The presumption under Rule 65(c) is that a bond will issue when a court grants a preliminary injunction, and exceptions are rare.  At oral argument, plaintiff's counsel represented that plaintiff was able and willing to pay a bond set by the court.

Plaintiff continues, since September 2021, to pay $500 a month in rent to defendants.  From September to November 2021 defendants charged $1,800 a month for rent, which leaves a $1,300 a month difference.  Starting in December 2021, defendants raised the rent to $1,830 a month, which leaves a $1,330 a month difference.  Assuming it takes at least two years from now before the merits of this case are decided at trial, the court determines that the bond amount shall total the difference in rent since September 2021 to January 2024.  Bond will therefore

be set in the amount of $37,150 plus interest at the rate of 0.41%.[4]  If circumstances change, the parties may file a motion to modify the bond amount.

IV.  Settlement Conference

The parties are hereby notified that a Settlement Conference is set before the Honorable Deborah Barnes, Magistrate Judge, on March 9, 2022 at 10:00 a.m. in Courtroom 27, 8th Floor (to be held virtually via Zoom, unless otherwise ordered).  Each party is ordered to have a principal with full settlement authority present at the settlement conference or to be fully authorized to settle the matter on any terms.

No later than 12:00 p.m. on March 2, 2022, counsel for each party shall submit a Confidential Settlement Conference Statement via email to DBorders@caed.uscourts.gov.  The parties may agree, or not, to serve each other with the Confidential Settlement Conference Statements.  The Confidential Settlement Conference Statements shall not be filed with the clerk and shall not otherwise be disclosed to the trial judge.  However, each

---

[4]    The court utilizes the current post-judgement interest rate as an approximation of the post-interest judgment rate, which is also appropriate to determine the pre-judgment interest rate.  See Blankenship v. Liberty Life Assurance Co. of Boston, 486 F.3d 620, 628 (9th Cir. 2007) (quoting Grosz–Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1164 (9th Cir. 2001)) ("[T]he interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate."); THE FED. RSRV. SYS., SELECTED INTEREST RATES (DAILY) – H.15, https://www.federalreserve.gov/releases/h15/ (last visited Jan. 12, 2022) (the rate of interest used in calculating the amount of post-judgment interest is the weekly average 1-year constant maturity (nominal) Treasury yield, as published by the Federal Reserve System each Monday for the preceding week).

1  party shall e-file a one-page document entitled "Notice of
2  Submission of Confidential Settlement Conference Statement."
3           IT IS THEREFORE ORDERED that plaintiff's motion for a
4  preliminary injunction (Docket No. 8) be, and the same hereby is
5  GRANTED.  Conditioned upon plaintiff posting bond in the sum of
6  $37,150, within 10 days from the date of this Order, defendants
7  are hereby ENJOINED from proceeding with an unlawful detainer
8  action against plaintiff pending final Judgment in this action.

Dated:    January 12, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE